Walter G. STERLING et al.,

v.

UNITED STATES of America.

Civ. A. 12518.

United States District Court
S. D. Texas,
Houston Division.

Jan. 3, 1963.

Virgil Childress, Houston, Tex., for plaintiffs.

Harold A. Chamberlain, Tax Division, Dept. of Justice, Fort Worth, Tex., and Woodrow B. Seals, U. S. Atty., for the Southern District of Texas for the United States.

832

SPEARS, District Judge (by assignment).

The following shall constitute the Court's findings of fact and conclusions of law in this cause:

## Findings of Fact

1. This is a suit for refund of income taxes. Plaintiffs are residents of the City of Houston, Harris County, Texas, which is under the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division. Jurisdiction is conferred upon this Court over the subject matter of this suit by Section 1346, Title 28, United States Code, as amended and now in effect.

2. Plaintiffs duly and timely filed their joint income tax return for the calendar year 1955 with the office of the District Director of Internal Revenue, Austin, Texas. On this return plaintiffs reported the receipt of $27,197.80 from the Tennessee Gas Transmission Company, hereinafter referred to as TGT, as long term capital gain. After audit of said return the Commissioner of Internal Revenue determined that the $27,197.80 payment, from TGT represented ordinary income. It is this determination which is contested by this action.

3. Prior to October 1, 1950, Walter G. Sterling, hereinafter referred to as Sterling, was the president and manager of Sterling Oil & Gas Company and its predecessor, Sterling Oil & Refining Company.

On July 31, 1949, the Coast Company, a wholly owned subsidiary of TGT, acquired 40% of Sterling Oil & Gas Company stock. During September of 1950, TGT acquired an additional 58% of the stock of Sterling Oil & Gas Company and was thereafter in control. The name of Sterling Oil & Gas Company was changed to Tennessee Production Company on June 6, 1951, and by an agreement dated August 20, 1954, Tennessee Production Company was merged into TGT on December 30, 1954.

4. As of January 1, 1950, while Sterling was president and manager, Sterling Oil & Gas Company adopted the Retirement Income Plan of TGT, which qualified under the provisions of section 165 (a) of the Internal Revenue Code of 1939; and Sterling became a qualified member of this retirement plan as of January 1, 1950.

5. The retirement income plan adopted by Sterling Oil & Gas Company was issued to cover any employee of the company and provided that the insured employee was to contribute an annual amount toward the payment of the premium on his coverage.

6. During the period from January 1, 1950, to September 1, 1950, Sterling contributed $933.75 to the retirement income plan of January 1, 1950, and the Sterling Oil & Gas Company contributed $3,535.43. On September 30, 1950, Sterling ceased to be the president and manager of Sterling Oil & Gas Company.

7. On October 3, 1950, Sterling entered into a contract with the Sterling Oil & Gas Company. This contract provided in part as follows:

"Sterling covenants and agrees that he will continue to make his services available to the Company on a full time basis for a period of five years beginning October 1, 1950 and ending September 30, 1955, not as an officer or employee, but in acting and fulfilling the duties, according to the bylaws of the Company, and as from time to time, of Chairman of the Board of Directors as and when elected to such position, and in the performance of such other duties and services as he may be called upon to perform from time to time which are commensurate with such position and with Sterling's qualification and ability, in connection with transactions or projects which the Company may undertake or any of the Company's other affairs upon which Sterling's assistance may be required. Sterling will provide his own office, office personnel, furnishings and equipment at his own expense, and the Company will not be chargeable with any part thereof."

8. The contract of October 3, 1950, also provided that Sterling was not to

" * * * engage or in any manner become interested, directly or indirectly in any business, trade or occupation competitive with the business carried on by the Company in the States of Texas and Louisiana during the term of this agreement; * * * ".

9. Neither the Sterling Oil & Gas Company, the Tennessee Production Company, nor TGT withheld deductions for social security taxes or income taxes with respect to the amounts paid Sterling under the contract of October 3, 1950, and all of these successor companies furnished Sterling with a form 1099 at the end of each taxable year which disclosed the amount paid to him during each year.

10. During the period from January 1, 1950, to September 30, 1955, Sterling, the Sterling Oil & Gas Company, the Tennessee Production Company and TGT, made the following contributions to their retirement income plan for Sterling's benefit:

| | |
|---|---|
| 1/1/50 to 12/31/50 | $ 5,958.91 |
| 1/1/51 to 12/31/51 | 5,958.91 |
| 1/1/52 to 12/31/52 | 5,958.91 |
| 1/1/53 to 12/31/53 | 5,958.91 |
| 1/1/54 to 12/31/54 | 5,958.91 |
| 1/1/55 to 9/30/55 | 4,469.18 |
| | $ 34,263.73 |

Of the aforesaid amounts Sterling contributed $933.75 from January 1, 1950, to September 1, 1950, and the companies contributed $33,329.98. Sterling did not report any of the $33,329.98 in contributions made by the companies on his income tax returns for the years 1950 through 1955.

11. Sterling ceased to be an employee of Sterling Oil & Gas Company when he resigned as president of the company on September 30, 1950.

12. No employer-employee relationship existed between Sterling and the company from October 3, 1950, to September 30, 1955.

13. In October of 1955, after expiration of the contract of October 3, 1950, Sterling received a payment from TGT Retirement Income Plan in the amount of $27,197.80. On their joint income tax return for 1955 the plaintiffs subtracted the $933.75 which Sterling had contributed to the plan prior to September 1, 1950, and reported the balance of $26,264.05 as long term capital gain. After audit of the 1955 return, the Commissioner of Internal Revenue determined that $933.75 of the $27,197.80 payment received by Sterling from TGT was not taxable and that the balance of $26,264.05 was taxable to plaintiffs as ordinary income. As a result of this and other adjustments not material herein, the Commissioner assessed a deficiency against plaintiffs in the amount of $7,033.18, plus interest in the sum of $920.08, totaling $7,953.26. This assessment was paid, $7,900.28 on May 2, 1958, and the balance of $52.98 was abated on February 10, 1958. Interest in the amount of $3.50 was refunded to plaintiffs on February 18, 1959.

14. On July 21, 1958, plaintiffs filed with the District Director of Internal Revenue, Austin, Texas, a claim for refund of $7,934.89 taxes and $867.10 interest. On February 6, 1959, plaintiffs' claim for refund was rejected in full by statutory notice of disallowance. This action was timely filed on February 12, 1959.

### Conclusions of Law

1. This is a suit for refund of income taxes, and jurisdiction over this controversy is conferred upon this Court by Section 1346, Title 28, United States Code, as amended, and now in effect.

2. Section 402(a) (2) of the Internal Revenue Code of 1954, essentially provides that distributions from an employees exempt trust, paid on account of the employee's separation from the service, shall be taxable as gain from the sale or exchange of a capital asset held for more than six months, i. e., at capital gain rates.

3. Sterling was not an employee of Sterling Oil & Gas Company after September 30, 1950; and, therefore, the distributions in the amount of $27,197.80

paid to him upon expiration of the contract of October 3, 1955, do not qualify for the capital gains treatment specified in Section 402(a) (2).

4. The money distributed to Sterling at the expiration of the contract of October 3, 1955, is taxable as ordinary income and judgment will be entered for the defendant.